# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re POINT CENTER FINANCIAL, INC., Debtor. | SACV 19-2505 DSF<br><br>OPINION |

Appellant Richard M. Kipperman, receiver for the so called "Brewer Group," a set of three judgment creditors of Debtor Point Center Financial, Inc. (PCF), appeals the Bankruptcy Court's order classifying his claim as unsecured.[1]

Pre-petition, the Brewer Group held junior liens on PCF's property. The senior lien was held by PCF's primary lender, Pacific Mercantile Bank (PMB). When PCF filed for bankruptcy, PMB filed a secured claim against the bankruptcy estate for slightly less than $9.7 million. Post-petition, the PMB claim was reduced twice. First, PMB sold part of the debt, valued at $4.8 million, for $3.43 million. As part of that transaction, PMB also assigned the right to pursue deeds of trust on PCF's principal Dan Harkey's personal property. In November 2014, the bankruptcy trustee and PMB reached a settlement on the remainder of PMB's claim wherein PMB agreed to accept a secured claim of $3.5 million and an unsecured claim of approximately $934,000 in place of its secured claim of approximately $5.1 million.

---

[1] The Court will refer to the appellant as the "Brewer Group."

CC: USBC: 8:13-bk-11495-TA

The Brewer Group filed claims totaling approximately $3.07 million allegedly secured by PCF's personal property. Eventually, the bankruptcy trustee moved to reclassify the Brewer Group's claim as unsecured on the basis that because there was insufficient property in the estate to satisfy PMB's senior claim, the Brewer Group's claims were entirely unsecured.

The Bankruptcy Court held that (1) PMB's claim should be valued at the time of the petition, (2) PMB's senior claim – to which no objection was ever made – was $9.7 million, (3) there was insufficient property in the bankruptcy estate to fully satisfy PMB's senior claim, and (4) any post-petition reductions in PMB's claim should benefit the bankruptcy estate and does not cure the Brewer Group's undersecured status at the time of the petition.  The receiver representing the Brewer Group interests has appealed the Bankruptcy Court's order.

Interpretations of the Bankruptcy Code are questions of law reviewed de novo.  In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007).  The Bankruptcy Court's property valuations are questions of fact reviewed for clear error.  In re Arnold & Baker Farms, 177 B.R. 648, 653 (B.A.P. 9th Cir. 1994).

This appeal presents three basic questions:

(1) As of what date should PMB's claim be valued?

(2) As of what date should PCF's property be valued?

(3) What property should be included in that valuation? Specifically:

    a. Should the value of Dan Harkey's personal property be included in the value of property available to satisfy PMB's senior lien?

    b. Do the post-petition reductions in PMB's claim increase the amount of security available to satisfy a secured claim held by the Brewer Group?

The first question is easily resolved.  The value of a disputed claim is determined at the time of the petition.  11 U.S.C. § 502(b).  PMB filed a

claim for approximately $9.7 million. No one filed an objection to this claim and it was allowed by the Bankruptcy Court.

The second question is also not difficult. The Brewer Group concedes that 11 U.S.C. § 506 provides discretion and flexibility to a bankruptcy court in when to value collateral available to satisfy secured claims. "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). There is no *legal* requirement that a collateral valuation cannot occur as of the petition date or that the valuation has to occur on the date of the motion to reclassify claims as the Brewer Group wants. Instead, § 506(a)(1) leaves the time of valuation to the discretion of the bankruptcy court. Therefore, it was not an error of law for the Bankruptcy Court to value the collateral as of the petition date.

The Brewer Group relies heavily on Dewsnup v. Timm, 502 U.S. 410 (1992), but Dewsnup involved the very different question of the treatment of liens in bankruptcy where the value of the collateral changes. It did not discuss the situation here where the unsatisfied amount of the claim of a senior secured creditor changes during the bankruptcy proceeding. In Dewsnup, the Supreme Court reached the sensible conclusion that a debtor cannot strip the lien from a piece of property under 11 U.S.C. § 506(d) based on a momentary valuation of the property. Instead, the lien carries forward until the property is actually foreclosed on. "Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." Id. at 417. The position of the Brewer Group here much more resembles the position of the "other unsecured creditors" in Dewsnup than the lienholder. The Brewer Group was unsecured at the time of the petition. Value later entered the bankruptcy estate not from the appreciation of the Brewer Group's collateral, but instead through negotiation with the senior secured creditor. There is no reason that those reductions should solely

3

or primarily accrue to the benefit of the Brewer Group, which had no role in obtaining them.

Left without a legal bar to the choice of valuation date, the Brewer Group does not argue that the choice of the petition date was an abuse of discretion, nor was it abuse of discretion under the circumstances.

The Bankruptcy Court also did not err in its valuation. The Harkey personal properties were not "property in which the estate ha[d] an interest." 11 U.S.C. § 506(a)(1). Harkey was not a debtor and, therefore, his property was not – and is not – part of the bankruptcy estate. Harkey's status was litigated in 2014 and the Bankruptcy Court found that Harkey should not be brought into the proceedings as a debtor. Appellee's Suppl. App'x 393, 402-10. The Brewer Group points to a state court ruling that Harkey is/was the alter ego of PCF, but the Brewer Group fails to explain how this modifies the operation of the bankruptcy statute. The alter ego ruling was relevant to Harkey's status as a debtor, but the Bankruptcy Court rejected the argument that it was controlling and ultimately found that Harkey should not be made a debtor. After that decision was made, Harkey's property was not – and did not become – "property in which the estate has an interest."

The Brewer Group fails to make any substantial argument that the actual valuation by the Bankruptcy Court was clearly erroneous. The Bankruptcy Court found that PCF's original bankruptcy schedules were not reliable as had been borne out over the course of the proceedings. The Bankruptcy Court also reasonably found that the amounts actually recovered provide significant evidence of what the value of the PCF property was at the time of the petition. These assessments were not clearly erroneous.

Once the value of PMB's claim at the time of the petition and the valuation of the estate's property at the time of the petition are determined, it is evident that there was no property available to secure the Brewer Group's lien. Therefore, the Bankruptcy Court correctly classified the Brewer Group claim as unsecured. As of the petition

date, all of the property of the bankruptcy estate was necessary to satisfy PMB's senior lien and under 11 U.S.C. § 506 there was no property within the estate that the Brewer Group had an interest in because PMB's interest consumed the entire value of the estate.

The Bankruptcy Court did not err in finding that the Brewer Group's claim is unsecured in its entirety. The Bankruptcy Court's order is AFFIRMED.

IT IS SO ORDERED.

Date: May 12, 2020

Dale S. Fischer
United States District Judge